IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                 No. CR 10-117 BDB

JEFF M. HENDERSON,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of a motion filed by Defendant requesting a new trial or, in the alternative, a judgment of acquittal [Docs. 329, 330], as well as a motion to strike filed by the Government [Doc. 338]. After considering the submissions of the parties and the applicable law, the Court will deny the motion for new trial, and deny the motion to strike, although the contents of the document in question will not be considered in ruling on the motion for new trial.

**Motion for New Trial**

Federal Rule of Criminal Procedure 33 authorizes a district court to grant a new trial if required in the interests of justice. Although a trial court is free to weigh the evidence and assess witness credibility in connection with such a motion, a motion for new trial is regarded with disfavor and should only be granted with great caution. *See United States v. Quintanilla,* 193 F.3d 1139, 1146 (10th Cir. 1999). A motion for new trial should only be granted if, after weighing the evidence and the credibility of the witnesses, the court determines that the verdict is so contrary to the weight of the evidence that a miscarriage of justice may have occurred. *See United States v. Garcia*, 182 F.3d 1165, 1170 (10th Cir. 1999).

**Arguments Specific to Count 39:** Defendant's motion for new trial first addresses Count 39, under which Defendant was convicted of violating the civil rights of William Kinnard and Carah Bartel. Defendant points first to the fact that Amity Bruce, one of the witnesses testifying as to this Count, improperly testified that she had been involved in a sexual relationship with Defendant. Ms. Bruce's statement came during rebuttal questioning by the Government. As Defendant argues, the Court had already orally granted a motion in limine preventing the introduction of any evidence of the alleged sexual relationship, and Ms. Bruce's testimony violated the Court's order. Defendant contends the Government deliberately elicited the testimony, and thus committed misconduct. Defendant also contends the testimony was the cause of Defendant's conviction under Count 39, because he was acquitted of many other civil-rights-violation charges.

The Court first finds that counsel for the Government did not engage in misconduct by asking the question that led to Ms. Bruce's one-sentence statement to the effect that she and Defendant had a sexual relationship. While the Court ruled at trial that counsel for Defendant had not opened the door to this testimony, and admonished counsel for not approaching the bench before engaging in the questioning, the Court understands why counsel could have believed in good faith that the door had been opened. Defense counsel engaged in cross-examination of Ms. Bruce, attempting to undermine her testimony that she and Defendant communicated often during the period in question. [Trial Transcript Vol. II, pp. 133-34, 140] It is a close call whether this line of cross-examination opened the door to rebuttal testimony that might, if believed, explain why there was so much communication between Ms. Bruce and Defendant. Making such a judgment call during the heat of trial, even if the judgment call is rejected by the presiding judge, does not rise to the level of misconduct. *See, e.g., United States v. Clark*, 2006 WL 3196075 (E.D.Mich. 2006) (incorrect judgment call regarding propriety of question did not constitute prosecutorial misconduct).

The Court also determines that the wrongly-proffered testimony concerning the sexual relationship does not require a new trial, even assuming prosecutorial misconduct occurred. Although the Court rejected Defendant's request for a mistrial, the Court did instruct the jury to disregard the statement made by Ms. Bruce. [*Id.*, p. 146] The jury is presumed to have followed the Court's instruction and to have disregarded the answer, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating. *See United States v. Caballero,* 277 F.3d 1235, 1243 (10th Cir.2002). No such overwhelming probability or strong likelihood is present in this case. Ms. Bruce's statement was one sentence during a three-week trial. Furthermore, the members of the jury obviously did not let the statement poison them against Defendant, as he was acquitted of the vast majority of charges brought against him. It is not logical to infer the testimony would have impacted the jury's view of Defendant only with respect to this specific charge, as Defendant appears to argue. Instead, the jury's ability to disregard the testimony and acquit Defendant of a great number of charges cuts against Defendant's contention that this testimony had a devastating effect with respect to this particular charge. In fact, the Court finds no likelihood that the testimony affected the jury's verdict at all, and will deny the motion for new trial on that basis. *See United States v. Green*, 435 F.3d 1265, 1268-69 (10th Cir. 2006) (even assuming prosecutor's elicitation of testimony constituted misconduct, trial court did not abuse discretion in denying motion for new trial on ground the testimony had no impact on the verdict).

Defendant's next contention is that the evidence supporting conviction on Count 39 should be disregarded because the witnesses who supplied that evidence are not credible. The jury found to the contrary, and while the Court is allowed to weigh credibility to some extent in deciding a motion for new trial, it may not simply substitute its judgment for that of the jury. *See Butcher v. United States*, 368 F.3d 1290, 1297 (11th Cir. 2004). Instead, the evidence must

3

so preponderate against the verdict that the Court is convinced a miscarriage of justice has occurred. *See id.* That is not the situation here. As the Government discusses in the response brief, Count 39 was supported by the testimony of several witnesses. Defendant attempts to disparage these witnesses' credibility, arguing that each had a motive to lie and that several had admitted to previously lying under oath. However, the testimony of Rochelle Martin, Ms. Bruce, Ms. Bartel, and Mr. Kinnard was consistent on the salient point – that Ms. Martin could not have been the reliable confidential informant used by Defendant to support his search warrant affidavit. The Court cannot find that a miscarriage of justice occurred as to Count 39.

**Arguments Specific to "Ronald Crawford" Counts:** Defendant's arguments concerning Counts 45, 47, 50, 51, 52, 54, and 55 are directed at rebuttal testimony presented by the Government. These charges all concern a search warrant executed at the residence of Ronald Crawford, and are based on Defendant's sworn testimony, provided at a suppression hearing, to the effect that he was present at or near the residence on January 5th and 6th, 2009, and observed Mr. Crawford there. During his testimony at the current trial, Defendant reiterated his claims that he had indeed been observing Mr. Crawford's residence on the dates in question. To contradict that testimony, the Government presented as a rebuttal witness an FBI agent named Andrew Kerstetter. Mr. Kerstetter testified about his review of Defendant's cell phone records and the location of certain cell towers in the Tulsa area, and concluded that Defendant's cell phone was not at Defendant's claimed location on either January 5th or 6th, 2009. Defendant raises several arguments concerning Agent Kerstetter's testimony.

Defendant first contends the substance of the testimony as well as Agent Kerstetter's identity as a witness should have been disclosed prior to trial. It is well-settled that generally, Rule 16 of the Federal Rules of Criminal Procedure does not require the government to disclose rebuttal witnesses or evidence. *See, e.g., United States v. Frazier*, 387 F.3d 1244, 1269 (11th Cir. 2004). This general rule applies to expert witnesses as well as other witnesses. *See id.*

4

To avoid the general rule, Defendant first argues that the testimony in question was not in fact rebuttal testimony. He points out that he did not present any evidence concerning cell phone records, cell tower locations, or anything similar to Agent Kerstetter's testimony. Therefore, he reasons, the Agent's testimony could not be considered rebuttal testimony. This argument is not persuasive. To the Court's knowledge, no authority exists that would require rebuttal evidence to be exactly the same type of evidence as that offered by a defendant. Rather, rebuttal evidence is just that – evidence offered to rebut the content of testimonial or other evidence proffered by the defendant. Defendant presented evidence that he was in fact at a particular location on January 5th and 6th, 2009; Agent Kerstetter's testimony was offered to rebut that contention. "[W]hen a defendant makes a false statement during direct testimony, the prosecution is allowed to prove, either through cross-examination or by rebuttal witnesses, that the defendant lied as to that fact." *United States v. Crockett*, 435 F.3d 1305, 1313 (10th Cir. 2006).

Defendant next attempts to avoid the general rule by pointing to a broad provision contained in Rule 16 itself. He argues that the Government was required to produce evidence that was material to the preparation of his defense, regardless of whether it was rebuttal evidence, and contends Agent Kerstetter's testimony as well as the cell phone records on which he relied should have been produced under that provision. *See* Rule 16(a)(1)(E), Fed.RulesCrim.P. The Court first notes that this exception on its face applies to documentary evidence such as the cell phone records, and does not mention testimony of a witness. *Id.* The Court also notes that the cell phone records were Defendant's own records, and were part of an exhibit he himself submitted at trial. [Trial Transcript Vol. XIV, p. 3667]

Most importantly, however, Defendant's argument that the rebuttal testimony and evidence was material to his defense is not well taken. Defendant contends if the information had been produced prior to trial, he would have had time to obtain an expert to contradict Agent

5

Kerstetter's testimony, and to show that cell-phone-tower analysis is not reliable. According to Defendant, this ability to undercut the testimony would have helped him prove his defense. As best the Court can understand the argument, Defendant claims that any evidence offered by the Government is material to his defense if Defendant can produce evidence of his own that tends to cast doubt on the reliability of that Government evidence. This is not what "material to a defense" means. Evidence is material to a defense if that evidence, not the ability to contradict it, could be used to counter the government's case or to bolster the defense. *See, e.g., United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993); *United States v. Card*, 46 Fed.Appx. 941, 945 (10th Cir. 2002, unpublished). The evidence presented by the Government through Agent Kerstetter did not meet this standard. The evidence supported the Government's case, rather than countering it, and contradicted Defendant's defense, rather than bolstering it. The Government was not required to disclose this evidence under Rule 16.

Moving on from the disclosure question, Defendant contends the evidence provided by Agent Kerstetter constituted expert testimony, and should not have been admitted unless the Court first made the findings required by Rule 702 of the Federal Rules of Evidence. At trial, the Court ruled the evidence was not expert testimony, based on a cursory initial understanding of the testimony Agent Kerstetter was about to provide, and ruled that he could testify about Defendant's phone records. [Trial Transcript XIV, p. 3668] Defendant's objection to the testimony at trial was not directed at the substance of the testimony, as to whether it was reliable or whether Agent Kerstetter was qualified to give the testimony. It was simply based on lack of notice – that the Government had indicated earlier that it would not introduce any expert testimony, and now was about to do so. [*Id.*] It was in that context that the Court ruled the expected testimony did not sound like expert testimony. [*Id.*] Defendant now attacks both the reliability of the evidence as well as the Court's failure to make the Rule 702 findings.

The first issue the Court will address concerns the classification of the evidence as expert testimony or lay testimony, with the concomitant issue of the lack of Rule 702 findings. As Defendant points out, the Tenth Circuit has held that at least some types of cell-tower testimony should be considered expert testimony subject to the requirements of Rule 702. *See United States v. Yeley-Davis*, 632 F.3d 673, 684 (10th Cir. 2011). The *Yeley-Davis* case involved testimony that a cell phone tower under some circumstances will assign a different phone number to a cell phone, so that the different phone number will show up on a person's cell-phone records even though the call was actually made from the original number. The Court agrees that this type of evidence, which appears to contradict common sense, should be considered expert evidence. *See id.* However, that is not the type of testimony provided by Agent Kerstetter in this case. He simply reviewed Defendant's cell-phone records with the knowledge that one column of those records identified the cell tower that was nearest to the location of the cell phone at the time a particular call was made or received. [Trial Transcript Vol. XIV, pp. 3672-74] He also created and testified about a map showing the alleged location of Defendant's cell phone when it made or received calls on January 5th and 6th, 2009; this exhibit purported to show that Defendant's phone was not in the vicinity of Ronald Crawford's address on those dates, although it was in that location on January 12th, when the search warrant was executed. [*Id.*, pp. 3680-84].

There appears to be conflicting authority as to whether testimony such as that provided by Kerstetter should be considered expert testimony or simply well-informed lay testimony. The Eleventh Circuit has held that a detective's testimony, identical in nature to Agent Kerstetter's, was not expert testimony but lay testimony admissible under Rules 602 and 701 of the rules of evidence. *See United States v. Feliciano*, 300 Fed.Appx. 795, 801 (11th Cir. 2008, unpublished). Similarly, the Third Circuit has recently held that a custodian of records at Sprint could provide lay testimony, rather than expert testimony, that a cell phone constantly searches

7

for the strongest signal from a cell tower, and the strongest signal usually emanates from the closest tower. *See United States v. Kale*, 2011 WL 4361531 (3d Cir. 2011, unpublished). However, the Third Circuit did add that testimony concerning a cell phone's location at the time a call is made or received, such as the testimony provided by Agent Kerstetter in this case, "would have required a technical background." *Id.* In other cases the issue appears not to have been addressed because the witness was offered as an expert, not a lay witness. *See United States v. Schaffer*, 2011 WL 3820957 (5th Cir. 2011). It is the Court's view that testimony such as Agent Kerstetter's, while requiring a minimal level of training and specialized knowledge, does not rise to the level of expert testimony. A reasonably competent layperson, given a small amount of information, could easily examine a cell-phone record and determine the identity of the cell tower that handled a particular call. That same layperson, given a map of cell towers in the area, could identify the approximate location of the cell phone at the time the call was made or received. Thus, the Court agrees with the *Feliciano* opinion rather than *Kale*'s suggestion that this type of testimony should be provided by an expert.

Assuming the Court is wrong and the testimony should be considered expert testimony, it was still not error for the Court to fail to make the required Rule 702 findings. First, it must be pointed out that the Court was not asked to make such findings. As noted above, Defendant did not object to the testimony on the basis of the witness's lack of qualifications, or the reliability of the analysis he employed; he objected on the ground that he should have been provided notice of the proposed testimony. Defendant's objection to expert testimony must alert the trial court to the basis of the objection. *See United States v. Barbee*, 968 F.2d 1026, 1031 (10th Cir. 1992). As discussed above, disclosure of rebuttal testimony is not required under Rule 16, even if it is expert testimony.

Furthermore, there is no basis on which to challenge the testimony provided by Agent Kerstetter. He testified that he has received training in cell phone analysis and geolocation
8

training. [Trial Transcript XIV, p. 3671] Defendant did not challenge the extent of his training, and in fact his testimony established that he is knowledgeable in the field to the extent required by an expert. In addition, although Defendant suggests this type of testimony is not reliable, it has been accepted by numerous federal courts and the Court was unable to locate a case in which it was ruled inadmissible. *See, e.g., Schaffer, supra* (holding that this type of testimony is "neither untested nor unestablished" and has been accepted by many federal courts as a field of expertise). To the extent Defendant belatedly challenges either Agent Kerstetter's qualifications or the reliability of the evidence he provided, the Court rejects those challenges and would have rejected them during trial had they been raised at that time. The Court notes Defendant's reliance on a scholarly article attached to his brief. However, even that article states only that "location data is not one hundred percent accurate" and that the accuracy of the data is lessened in rural areas where fewer cell towers are located. [Doc. 329, Exh. 1, p. 20] The article then states that cell phone data is more accurate in locations with multiple cell towers, which is certainly the case in the area about which Agent Kerstetter was testifying, given the number of cell towers shown on the map he created. [*Id.*] The evidence provided by Agent Kerstetter was reliable, and is admissible even as expert testimony.

**Juror Affidavit:** Defendant raises another issue that is applicable to the Crawford counts. Defense counsel has obtained an affidavit from a juror, who discusses the jury's handling of the Crawford counts and states the guilty verdicts on those counts were not in fact the juror's verdicts. The Government has moved to strike this affidavit under Rule 606(b) of the Federal Rules of Evidence. [Doc. 338] Defense counsel recognizes that the affidavit may run afoul of Rule 606(b), and apologizes to the Court should it be determined that is the case. The Court finds that is indeed the case, and accepts defense counsel's apology. Rule 606(b) clearly and specifically precludes a juror from testifying, either live or via affidavit, as to any matter occurring during deliberations, or as to the effect of anything on that juror's mind or emotions as

9

influencing the juror's decision to agree or disagree with a verdict. This is precisely what the juror's affidavit in this case concerns – matters occurring during deliberations, and the effect of the foreperson's actions on her decision to initially agree to the verdict. The juror alleges in part that he/she changed his/her mind on the Crawford counts after initially voting to convict, but was told by the foreperson it was too late to do so because the verdict form had already been signed. The juror also alleges there was a misunderstanding in open court when the presiding judge asked each juror if the verdict was theirs, and the juror answered in the affirmative. This is exactly the type of second-guessing that Rule 606(b) is designed to prevent; problems occurring during deliberations must be brought out before a verdict is entered, or no testimony concerning such problems will be considered. *See, e.g., Tanner v. United States,* 483 U.S. 107 (1987) (post-verdict allegations of alcohol and drug use by jurors may not be considered).

However, it is not necessary to strike the juror's affidavit from the record; it is enough to refuse to consider its contents in ruling on the motion for new trial. This will allow Defendant to pursue his challenge to the verdicts on appeal.

**Motion for Acquittal**

Defendant moves for acquittal on Counts 39, 54, and 55. As he recognizes, the scope of review is much more limited on a motion for acquittal than on a motion for new trial. In addressing a motion for acquittal, the Court must view the evidence in the light most favorable to the government, and decide whether any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt. *See United States v. Irvin*, 656 F.3d 1151, 1162 (10th Cir. 2011). The Court may not weigh conflicting evidence or consider witness credibility, and must instead presume the jury's findings as to credibility are correct. *See id.*

As to Count 39, Defendant's arguments are essentially the same as the ones he made in the motion for new trial, and the Court rejects them for the same reasons discussed above. As to Counts 54 and 55, Defendant raises a new argument. He points out that the presiding judge at

the suppression hearing did not consider Defendant's statements in ruling on the motion to suppress, and therefore argues as a matter of law that the statements cannot be considered "material" for purposes of these two perjury charges. It is true that materiality is an element of a perjury charge. *See U.S. v. Durham*, 139 F.3d 1325, 1329 (10th Cir. 1998). However, the applicable standard is not whether the false statement actually influenced the decision made; the statement must merely have a natural tendency to influence, or be capable of influencing, that decision. *See id.* The jury was so instructed in this case, and found Defendant guilty of these two charges. It is certainly true that the false statements alleged in counts 54 and 55 were capable of influencing the presiding judge's decision, even if ultimately they did not do so. For this reason, Defendant's argument concerning materiality must be rejected.

**Conclusion**

Based on the foregoing discussion, Defendant's motions for new trial or in the alternative for acquittal will be denied, as will the Government's motion to strike.

**ORDER**

A Memorandum Opinion having been filed in this case, it is ORDERED that Defendant's motions for new trial and/or for acquittal [Docs. 329, 330] be, and hereby are, DENIED, and that the Government's motion to strike [Doc. 338] be, and hereby is, DENIED.

DATED this 1st day of December, 2011.

_____
BRUCE D. BLACK
Chief Judge
Sitting by Designation