IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                          No. CR 10-117 BDB

JEFF M. HENDERSON,

      Defendant.

## MEMORANDUM OPINION

THIS MATTER comes before the Court for consideration of a pleading filed by a non-party to this criminal proceeding ("Petitioner"). [Doc. 335] The Government did not respond to this pleading. After considering Petitioner's arguments and the applicable law, the Court will deny the request to impose sanctions on the Government attorneys involved in this case as well as Petitioner's request for attorney's fees and costs. The Court will also deny the request to expunge Petitioner's name from all documents filed in this case. However, the Court will order sealed Document 192, the one brief in which Petitioner's name is mentioned by the Government, which led Petitioner to file the current pleading. The Court will also seal Documents 198 and 335, both of which mention Petitioner by name.

**Facts and Procedural History**

Petitioner is a police officer employed by the City of Tulsa. A fellow officer, the defendant in this case, was indicted on a number of counts, including charges that he violated the civil rights of various individuals. Some of these counts accused the defendant of conspiring with other officers to commit the alleged civil-rights violations. Several months prior to the trial, this Court held a *James* hearing concerning the conspiracy counts, to determine whether

any co-conspirator statements would be admissible at the trial. In preparation for the *James* hearing, the Government filed a memorandum briefly discussing the various conspiracy counts. In that memorandum the Government mentioned Petitioner's name exactly once. The Government in a single sentence identified Petitioner and another individual as unindicted co-conspirators in connection with Count 37, a civil-rights-conspiracy count. Nothing in the Government's memorandum explains what role Petitioner allegedly played in the conspiracy, or what overt acts, if any, he allegedly performed in support of the conspiracy. The memorandum contains no details about Petitioner's actions, beyond simply naming him as one of the unindicted co-conspirators.

Unfortunately for Petitioner, this case was of great interest to the *Tulsa World*, a daily newspaper circulated throughout the greater Tulsa area. The *World* obtained access to the Government's memorandum, which was not filed under seal, and over the next few months ran several stories identifying Petitioner as an unindicted co-conspirator. The first of these stories was based on the Government's memorandum, but others were based on testimony given at the *James* hearing as well as at trial. Shortly after the Government's memorandum was filed and the first *Tulsa World* story appeared, Petitioner filed a motion [Doc. 198] requesting sanctions against the Government's attorneys and asking that his name be expunged from all pleadings filed in this case. This Court issued an opinion indicating it was too early to definitively decide whether naming Petitioner as an unindicted co-conspirator was justified, and allowing Petitioner to renew his motion following the conclusion of trial.

At trial, according to Petitioner, the only witness who accused him of involvement in the alleged civil-rights violation was Brandon McFadden.[1] McFadden, who as Petitioner points out

---

[1] As the Court noted above, the Government has not responded to Petitioner's renewed motion for sanctions and thus has not contradicted any of Petitioner's factual assertions. Rather than comb through the transcript of the three-week trial to ascertain whether Petitioner's recitation of the evidence is accurate, the Court accepts it for purposes of this opinion.

is an admitted perjurer, testified that Petitioner was with Mr. McFadden, another unindicted co-conspirator, and the defendant in this case when they went into a house and hid a shotgun so it could be discovered later during a search. Petitioner points out that McFadden's testimony was contradicted by other witnesses and suggests it was unworthy of belief. As Petitioner notes, the defendant was not convicted of this count.

A few weeks after the conclusion of the trial, Petitioner filed the instant pleading requesting that the Court investigate the actions of the Government attorneys and renewing his request for sanctions. That matter is before the Court for decision at this time.

**Discussion**

It cannot be doubted that identification by the Government of an unindicted co-conspirator is a serious matter that may implicate due-process concerns. *See, e.g., In re Smith*, 656 F.2d 1101, 1106-07; *United States v. Anderson*, 55 F.Supp.2d 1163, 1168-69 (D. Kan. 1999). Tracking the approach of various courts that have addressed this issue, Petitioner suggests two possible ways to analyze such a disclosure: first, as a violation of Rule 6 of the Federal Rules of Criminal Procedure; second, as a straightforward due-process question. *Compare, e.g., Finn v. Schiller*, 72 F.3d 1182, 1186-91 (4th Cir. 1996) (discussing disclosure of unindicted co-conspirator's identity as possible violation of Rule 6), *with United States v. Holy Land Found. for Relief and Dev.*, 624 F.3d 685, 692-93 (5th Cir. 2010) (noting that 5th Amendment rights can be violated when government identifies unindicted co-conspirator and makes factual accusations against the individual or entity). The Court will address each of these potential avenues of redress to decide whether to grant Petitioner the relief he seeks.

**Rule 6:** Rule 6(e) prohibits an attorney for the government from disclosing "a matter occurring before the grand jury" and adds that a knowing violation of Rule 6 may be punished as a contempt of court. Fed.R.Crim.Pr., Rules 6(e)(2)(B)(vi) and 6(e)(7). Petitioner seeks to invoke this rule, arguing that "[a]ny involvement by Mr. Hickey as an alleged co-conspirator of

3

the defendants and others could only have come to the government through its grand jury investigation in this case." [Doc. 335, p. 8]  Therefore, continues Petitioner, disclosure of his name was indisputably a disclosure of a matter occurring before the grand jury.  It is clear the disclosure came from a person covered by the restrictions of Rule 6, as it was contained in a pleading filed by an attorney for the Government in this case.  For this reason, concludes Petitioner, this Court is obligated to impose contempt sanctions on the Government attorneys.  In support of that proposition, Petitioner cites the Fourth Circuit case of *Finn v. Schiller, supra,* 72 F.3d 1182.

The Court disagrees with Petitioner's argument for two reasons.  First, it is not true that the Government attorneys could only have learned of Petitioner's alleged involvement in the activities forming the basis of Count 37 through the grand jury proceedings.  It is just as likely the Government learned of that alleged involvement through its interviews with Brandon McFadden or through other investigation independent of the grand jury proceedings.  Therefore, the Government's disclosure of Petitioner's alleged status as an unindicted co-conspirator is not *ipso facto* a violation of the secrecy provisions of Rule 6(e).  *See, e.g., In re Grand Jury Investigation*, 610 F.2d 202, 217 (5th Cir. 1980) (disclosure of information obtained from a source independent of the grand jury proceedings, such as a prior government investigation, does not violate Rule 6(e)).

More importantly, even if the Court accepts that a violation of Rule 6(e) occurred, the Court is not automatically required to impose contempt sanctions on the violator.  While the Fourth Circuit did state in *Finn* that it is the court's "duty" to investigate an alleged violation of Rule 6(e)(2) and to "impose contempt sanctions when it finds a violation has occurred," 72 F.3d at 1189, it appears this sentence in *Finn* overstates the rigidity of the contempt provision.  As noted above, Rule 6(e)(7) provides that a knowing violation of the rule **may** be punished by contempt; use of the word "may"means courts have discretion to decide whether to impose such

4

sanctions. *See, e.g., In re Sealed Case*, 250 F.3d 764, 770 (D.C. Cir. 2001) (citing "may be punished" language of Rule 6(e), and stating court's decision whether to hold the government in contempt is reviewed only for abuse of discretion).[2] In exercising that discretion, the Court will consider factors such as the egregiousness of the violation, the extent to which the disclosure maligned Petitioner's reputation, and any countervailing considerations that might have supported the disclosure or that militate against imposition of the severe sanction of contempt.[3] *Cf. In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1068 (D.C. Cir. 1998) (court determines whether contempt sanctions or other equitable relief should be granted following a Rule 6 violation, taking into account the nature of the violation and what remedy will be sufficient to deter further leaks of grand-jury information).

The severity of the Government's conduct in this case pales in comparison to other cases addressing identification of unindicted co-conspirators. In *Finn*, for example, the federal prosecutor filed an eighty-three page statement in a criminal case, mentioning Mr. Finn by name over 370 times and alleging that Mr. Finn and others conspired to commit mail, wire, and securities fraud. 72 F.3d at 1185. Similarly, *In re Smith, supra*, found a violation of due process where the federal prosecutor twice, in open court, accused the unindicted co-conspirator of

---

[2]The D.C. Circuit added that ordinarily, once a prima facie showing is made that Rule 6(e) was violated, the district court must conduct a show-cause hearing. 250 F.3d at 770. The Court finds such a hearing unnecessary in this case. As noted above, Petitioner has not established a prima facie case because it is not apparent that "grand jury matters" were disclosed. Furthermore, as the D.C. Circuit held, it is not error to refuse to hold a hearing where there is no possibility the court will impose contempt sanctions. *Id.* As the Court discusses *infra*, no contempt sanctions are warranted in this case even if a violation of Rule 6(e) did occur, and there is no possibility a hearing would alter that situation.

[3]These factors are also relevant to the due-process analysis which follows this Rule 6 discussion. *See United States v. Anderson*, *supra*, 55 F.Supp.2d at 1167-68 (in due-process inquiry, court must balance interests of government in naming unindicted co-conspirator against individual harm that stems from being accused without having a forum in which to obtain vindication).

5

accepting bribes. 656 F.2d at 1103. In contrast, in this case the Government's brief contained no details as to what acts Petitioner supposedly committed in his role as a co-conspirator, and merely named him as such. A reader of the brief would not have any idea what alleged role Petitioner had in the incident, and would not be able to place a label on him as a bribe-taker or a person engaged in fraud, as occurred in *Finn* and *Smith, supra*.

On the other hand, Petitioner's reputation was clearly harmed by the Government's failure to file its brief under seal. As noted above, shortly after the hearing the *Tulsa World* identified Petitioner in a front-page article as an unindicted co-conspirator with respect to Count 37, and continued to name him in subsequent articles. As a police officer, Petitioner serves as a public official and his reputation for honesty and integrity is crucial to his career. The newspaper articles could easily have associated him, in the public's mind, with the defendants in both of the impending police-corruption trials. This is especially true since members of the public were not likely to understand what an "unindicted co-conspirator" is, and were likely to simply hear the word "co-conspirator" and attribute guilt by association to Petitioner.[4]

Of course, to some extent the harm to Petitioner's reputation was unavoidable, given the evidence presented at trial concerning Count 37. There was testimony, albeit from only one witness, that Petitioner was at least present with other officers when the firearm was allegedly hidden and when it was recovered during the subsequent search. Given the extensive coverage of the trial by the *World*, it is likely Petitioner would have been identified as a participant, since it is always newsworthy if an officer of the law is accused of wrongdoing. This harm to Petitioner's reputation was inevitable, as the Government is always entitled to present evidence

---

[4]The Court notes the somewhat surprising fact that during jury selection, a quite small percentage of venire-panel members admitted to reading articles in the *Tulsa World* about the two police-corruption cases. This means only a small portion of the Tulsa-area population may have actually ever been aware of Petitioner's status as an alleged unindicted co-conspirator, which would lessen the harm to his reputation considerably.

at trial in support of its allegations of conspiracy. *See, e.g., United States v. Anderson*, *supra*, 55 F.Supp.2d at 1169 (government has significant interest in naming individuals as co-conspirators at trial, as government is entitled to attempt to prove its case). It appears to the Court, however, that identifying Petitioner as a co-conspirator far in advance of the trial caused him more harm than would have resulted from an in-trial identification by one witness. The passage of time allowed Petitioner's name and status as an alleged unidentified co-conspirator to appear in a number of recycled newspaper articles, making it more likely that a greater number of citizens would become familiar with the allegation against him.

The Court also notes that there appears to have been no governmental interest in identifying Petitioner in the *James*-hearing brief. The purpose of the *James* hearing was to discuss potential co-conspirator statements the Government might attempt to introduce into evidence at trial. This is a valid reason to identify alleged unindicted co-conspirators, although clearly the better practice would be to identify them in a sealed pleading. *See United States v. Holy Land, supra*, 624 F.3d at 693. However, in this case the Government had no intention of offering any statement by Petitioner against any Defendant, and said so explicitly in its brief. Thus, there was no reason at all to identify Petitioner publicly as an unindicted co-conspirator, and the failure to submit the brief as a sealed pleading was a clear error of judgment.

The error in judgment that occurred in this case, however, is not grounds for the extreme sanction of contempt. As noted above, in its brief the Government did not accuse Petitioner of any specific action or otherwise attempt to smear his reputation in the minds of the public. The cursory mention of his status as an alleged unindicted co-conspirator, without more, was not a dramatic or attention-grabbing statement; the unfortunate fact that the *Tulsa World* was paying close attention and latched onto the statement was the main cause of the harm to Petitioner's reputation. In addition, no information has been provided to the Court that would give rise to an inference or indication of an untoward motive for the Government's identification of Petitioner

7

as an unindicted co-conspirator. There has been no evidence, for example, that the Government was attempting to pressure Petitioner into testifying for the prosecution, or punishing him for a failure to agree to do so. *See, e.g., Finn v. Schiller*, *supra*, 72 F.3d at 1189 (attorneys for government cannot be allowed to violate Rule 6 in an effort to pressure a target into a plea agreement). The most obvious reading of the Government's statement in its brief is that it was part of the Government's attempt to provide a synopsis of the evidence supporting each conspiracy charge, in advance of the *James* hearing. The brief discusses each charge and concisely outlines the evidence in support, then states whether a co-conspirator's statement will be offered at trial or not; it was in that context that Petitioner was identified as an unindicted co-conspirator. It is highly unfortunate that the Government did not contemplate the consequences of identifying unindicted co-conspirators in the brief, and did not file it under seal to avoid those consequences. That failure, however, is not contemptuous behavior.[5]

**Due Process:** Identification of an unindicted co-conspirator raises due-process concerns because the individual identified is accused of participating in a crime, but is not afforded a forum in which he can attempt to vindicate himself. *See United States v. Briggs*, 514 F.2d 794, 804-06 (5th Cir. 1975). In determining whether due process requires that the individual be granted a remedy, and if so what that remedy might be, courts balance the private harm suffered by the individual with the governmental interest that is served by the identification. *See id.; see also United States v. Anderson, supra*, 55 F.Supp.2d at 1168.

---

[5]The Court notes that as part of the remedy for the contempt sanction he requested, Petitioner asked for an award of attorney's fees and costs. There is authority from the D.C. Circuit indicating such an award is not permissible in cases like this. *See In re Sealed Case No. 98-3077*, *supra*, 151 F.3d at 1070. As the Court declines to find the Government attorneys in contempt, it is not necessary to address that question in this opinion. Similarly, the Court need not weigh in on other issues that have divided courts – for example, whether the sanction should be considered civil or criminal contempt, and whether a Rule 6 contempt proceeding may be initiated by a private plaintiff. *See id.* at 1069-70, n. 8.

As discussed above, at the point Petitioner was identified as an unindicted co-conspirator in the Government's *James*-hearing brief, there was no governmental interest in publicly branding him as such. No co-conspirator statements were at issue, and there was no reason not to file the brief under seal. Therefore, there is no countervailing governmental interest to balance against the harm suffered by Petitioner. The Court has already analyzed the potentially significant harm to Petitioner's reputation, given the repeated attention paid to his status as an alleged co-conspirator by the *Tulsa World*. In the absence of any governmental interest that could justify the harm caused Petitioner, due process does require some type of remedy.[6]

The remaining question is whether the remedy should consist of total expungement of Petitioner's identity from any document or transcript filed in this case, as Petitioner requests. Alternatively, the pre-trial pleadings that identify Petitioner could be sealed, so they remain part of the record of the case but are not available to the public. The Court will choose the latter option. Expungement is an extreme measure, as it alters the historical record of the case for all time. It is one thing to order expungement of names from a single document such as an indictment, where that official charging document refused to indict several individuals but still proceeded to accuse them of wrong-doing. *See Briggs*, *supra*. It is entirely another thing to remove Petitioner's name from the entire record of the case, especially since he was named at trial as a participant, albeit a minor one, in Count 37.[7]

---

[6] It should be pointed out again that this lack of governmental interest applies only to the identification of Petitioner in the pre-trial brief filed by the Government. At trial, the Government clearly had an interest in attempting to prove Count 37 through the testimony of Brandon McFadden, who named Petitioner as one of the participants in the events in question. *See, e.g., Briggs, supra*, 514 F.2d at 805.

[7] The Court recognizes that Mr. McFadden is an admitted perjurer, and that the jury apparently found most if not all of his testimony to be not credible. However, even perjured testimony remains part of the record of a case, even if the falsehoods unfairly malign certain individuals.

Furthermore, expungement would gain little more for Petitioner than will sealing the documents in question. The cat is already out of the bag, so to speak, and it is unlikely any member of the public will be paying attention to what occurs in the case at this point. By sealing the pre-trial documents, the Court will be preventing any future interested party from discovering that Petitioner was labeled as a co-conspirator, while still allowing access to the less-pejorative testimony of Mr. McFadden. That testimony did not use any potentially inflammatory label such as "co-conspirator," but merely described Petitioner's alleged presence at the scene during the alleged events that formed the basis for Count 37. *See, e.g., United States v. Anderson, supra*, 55 F.Supp.2d at 1170 (despite finding of due-process violation, declining to strike all references to unindicted co-conspirators from the case record, as they were identified at trial); *see also United States v. Holy Land Foundation, supra*, 624 F.3d at 693 (where government's error was failure to file an attachment under seal, district court did not abuse its discretion in sealing attachment rather than expunging petitioner's identity from case record).

The Court notes also that expungement would not eliminate Petitioner's status as *Giglio*-impaired. The United States Attorney's office, knowing that Petitioner has been accused of wrongdoing, will be required to disclose that fact in future cases whether or not his identity is expunged from the record of this case. Of course, should anyone question Petitioner about the accusation he will be able to point out that no one was convicted of Count 37, that disinterested witnesses testified he was not at the location in question at the relevant times, and that Mr. McFadden's testimony was apparently not found worthy of belief by the jury.

In sum, as in *Holy Land Foundation* and *Anderson*, the Court does not find complete expungement to be an appropriate remedy. Instead, sealing the pre-trial documents that mention Petitioner's status as an unindicted co-conspirator will accomplish the main ends he seeks, while allowing the case record to remain historically intact.

**Conclusion**

The Court once again emphasizes that the Government should have filed its brief under seal, and trusts the Government attorneys will remember to act accordingly if they have occasion to identify unindicted co-conspirators in the future. The Court also sympathizes with Petitioner's plight; he was accused of participating in a conspiracy yet given no forum in which he could attempt to clear his name. It is to be hoped that sealing the pleadings in question will prevent any future damage to Petitioner's reputation. As to the past harm he has suffered, presumably this was repaired to some extent by the jury's acquittal of Defendants on Count 37, as well as the support of Petitioner's fellow officers who testified contrary to Mr. McFadden's version of events. The Court trusts Petitioner will not continue to suffer overly-burdensome fallout from the events that have occurred.

DATED this 8th day of March, 2012.

_____
BRUCE D. BLACK
Chief Judge
Sitting by Designation